# ORIGINAL

1  JEFF I. BRAUN – CA STATE BAR NO. 160149; NV STATE BAR NO.
   SUSAN L. KUPER- CA STATE BAR NO. 222776; NV STATE BAR NO. 9091
2  **MCNEIL, TROPP & BRAUN, LLP**
   1201 Dove Street, Suite 600
3  Newport Beach, California 92660-2835
   (949) 261-5229

2005 MAR -8  P 3: 24

4

5  Attorneys for Defendant CONSUMER DIRECT OF
   AMERICA, a Nevada Corporation

HZ

6

7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF NEVADA

10

11  KEITH A. FINK & ASSOCIATES, a sole            CASE NO. BC327620
    proprietorship dba Keith A. Fink & Associates,  UNLIMITED CIVIL CASE
12
             Plaintiffs,
13                                                **DEFENDANT CONSUMER DIRECT OF
     vs.                                          AMERICA'S NOTICE OF REMOVAL OF
14                                                ACTION FROM THE LOS ANGELES
    CONSUMER DIRECT OF AMERICA, a                 COUNTY SUPERIOR COURT OF THE
15  Nevada Corporation; FREEDOM MORTGAGE          STATE OF CALIFORNIA TO THE U.S.
    CORPORATION dba OCEAN WEST                    DISTRICT COURT OF NEVADA- LAS
16  FUNDING; MICHAEL A. BARRON, an                VEGAS (28 U.S.C. § 1441)**
    individual; JOSEPH COSIO-BARRON, an
17  individual; WAYNE BAILEY, an individual;
    PAUL GRADY, an individual; TERRY             CV-S-05-0304-JCM-RJJ
18  VICKERY, an individual, and DOES 1 through
    50, inclusive,
19
             Defendants.
20

21  TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR

22  ATTORNEYS OF RECORD:

23      PLEASE TAKE NOTICE that Defendant Consumer Direct of America (hereinafter

24  "Defendant") hereby files their Notice of Removal from State Court to the U.S. District Court of

25  Nevada- Las Vegas, pursuant to 28 U.S.C. § 1441.

26      The basis for removal to the U.S. District Court of Nevada is because the instant action

27  sought to be removed presents diversity of citizenship and therefore diversity jurisdiction

28  pursuant to 28 U.S.C. § 1332.

F:\WP\Katia\Notice Rem
oval.doc

ORIGINAL

ORIGINAL

1    JEFF I. BRAUN – CA STATE BAR NO. 160149; NV STATE BAR NO.
     SUSAN L. KUPER- CA STATE BAR NO. 222776; NV STATE BAR NO. 9091
2    **MCNEIL, TROPP & BRAUN, LLP**
     1201 Dove Street, Suite 600
3    Newport Beach, California  92660-2835
     (949) 261-5229
4

     Attorneys for Defendant CONSUMER DIRECT OF
5    AMERICA, a Nevada Corporation

6

7

                  SUPERIOR COURT OF CALIFORNIA
8

           COUNTY OF LOS ANGELES, CENTRAL DISTRICT
9

10

11    KEITH A. FINK & ASSOCIATES, a sole       CASE NO. BC327620
     proprietorship dba Keith A. Fink & Associates,    UNLIMITED CIVIL CASE
12               Plaintiffs,

13        vs.                         **DEFENDANT CONSUMER DIRECT OF**
                                     **AMERICA'S NOTICE OF REMOVAL OF**
14    CONSUMER DIRECT OF AMERICA, a        **ACTION FROM THE LOS ANGELES**
     Nevada Corporation; FREEEDOM            **COUNTY SUPERIOR COURT OF THE**
15    MORTGAGE CORPORATION dba OCEAN     **STATE OF CALIFORNIA TO THE U.S.**
     WEST FUNDING; MICHAEL A. BARRON, an   **DISTRICT COURT OF NEVADA- LAS**
16    individual; JOSEPH COSIO-BARRON, an      **VEGAS (28 U.S.C. § 1441)**
     individual; WAYNE BAILEY, an individual;
17    PAUL GRADY, an individual; TERRY
     VICKERY, an individual, and DOES 1 through    CV-S-05-0304-JCM-RJJ
18    50, inclusive,

19               Defendants.

20    _____

     TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR
21
     ATTORNEYS OF RECORD:
22
           PLEASE TAKE NOTICE that Defendant Consumer Direct of America (hereinafter
23
     "Defendant") hereby files their Notice of Removal from State Court to the U.S. District Court of
24
     Nevada- Las Vegas, pursuant to 28 U.S.C. § 1441.
25
           The basis for removal to the U.S. District Court of Nevada is because the instant action
26
     sought to be removed presents diversity of citizenship and therefore diversity jurisdiction
27
     pursuant to 28 U.S.C. § 1332.
28

F:\WP\Katia\Notice Rem
oval.doc

1    On or about February 18, 2005, the instant action was commenced in the Superior Court of

2  the State of California, in the County of Los Angeles, entitled Keith A. Fink & Associates et al. v.

3  Consumer Direct of America, et al., case number BC327620.  The date upon which Defendant

4  received a copy of said Complaint in this action was on or about February 5, 2005, when

5  Defendant was served with a copy of said Complaint and a summons from said state court.

6    This Action is a civil case of which the U.S. District Court of Nevada- Las Vegas, has

7  original jurisdiction under 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00

8  and none of the plaintiffs in this case reside in the same state as any of the defendants.  As such,

9  there is complete diversity pursuant to the auspices of 28 U.S.C. § 1332.  Even though Defendant

10  has recently learned that plaintiff has filed a First Amended Complaint (Defendant has not yet

11  been properly served with this First Amended Complaint but has only seen a copy of this First

12  Amended Complaint), both the original Complaint and the First Amended Complaint establish

13  diversity jurisdiction.  Plaintiff's Complaint against defendants seek to prevent federal jurisdiction

14  based on diversity of citizenship by alleging that some of the defendants are "authorized to

15  conduct business" in the State of California.  This is simply a sham to avoid federal jurisdiction.  It

16  is well established that the basic requirement in diversity cases is that all plaintiffs be of different

17  citizenship than all defendants; any instance of common citizenship prevents federal diversity

18  jurisdiction. For diversity purposes, a person is a citizen of the state in which he or she is

19  domiciled. A corporation is a citizen of the state in which it is incorporated and the state in which it

20  has its principal place of business.  (28 U.S.C.§ 1332). This case therefore establishes the complete

21  diversity of citizenship required to maintain a federal lawsuit under 28 U.S.C. § 1332.

22    DATED this _____ day of March, 2005.

23    MCNEIL, TROPP & BRAUN, LLP

24

25    By _____

26    Jeff I. Braun, Esq. - 8970
      Susah K. Kuper, Esq. - 9091

27    Attorneys for Defendant CONSUMER
      DIRECT OF AMERICA, a Nevada

28    Corporation

F:\WP\Katia\Notice.Removal.doc

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on the 7TH day of March, 2005, I deposited in the United State Mail,

3

postage prepaid, a true and correct copy of the above and foregoing **DEFENDANT CONSUMER**

4

**DIRECT OF AMERICA'S NOTICE OF REMOVAL OF ACTION FROM THE LOS**

5

**ANGELES COUNTY SUPERIOR COURT OF THE STATE OF CALIFORNIA TO THE**

6

**U.S. DISTRICT COURT OF NEVADA- LAS VEGAS (28 U.S.C. § 1441)** to the following

7

parties:

8

9
Keith A. Fink, Esq.                     Attorneys for Plaintiffs
Jack Rifenbark, Esq.                    (310) 268-0780

10
11500 Olympic Blvd., Suite 316
Los Angeles, CA 90064

11

12
Sara E. Hernandez, Esq.                 Attorneys for Plaintiffs
LAW OFFICES OF SARAH E. HERNANDEZ       (661) 313-2893

13
19425 B Soledad Canyon Road, Suite 463
Canyon Country, CA 91351

14

15

16

17
Katia Ioffe - An Employee of McNeil, Tropp & Braun

18

19

20

21

22

23

24

25

26

27

28

F:\WP\Katia\Notice Rem
oval.doc

1   Keith A. Fink, Bar No. 146841
    Jack Rifenbark, Bar No. 227698
2   KEITH A. FINK & ASSOCIATES
    11500 Olympic Boulevard, Suite 316
3   Los Angeles, California 90064
    Telephone: (310) 268-0780

4
    Sarah E. Hernandez, Bar No. 206305
5   LAW OFFICES OF SARAH E. HERNANDEZ
    19425 B Soledad Canyon Road, #463
6   Canyon Country, CA 91351
    Telephone: (661)313-2893

7

8   Attorneys for Plaintiff
    KEITH A. FINK & ASSOCIATES,
9   a sole proprietorship dba KEITH A. FINK & ASSOCIATES

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 2 1 2005

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
          J. SUNGA

10

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12         COUNTY OF LOS ANGELES – CENTRAL DISTRICT

13   KEITH A. FINK & ASSOCIATES, a sole   )   CASE NO. BC327620
    proprietorship dba Keith A. Fink & Associates, )
14                               )   COMPLAINT FOR:
              Plaintiffs,           )
15                               )   (1)   BREACH OF CONTRACT
          vs.                   )
16                               )   (2)   BREACH OF ORAL CONTRACT
                              )
17   CONSUMER DIRECT OF AMERICA, a   )
    Nevada Corporation; MICHAEL A. BARRON, )   (3)   BREACH OF IMPLIED IN FACT
    an individual; JOSEPH COSIO-BARRON, an   )       CONTRACT
18   individual; WAYNE BAILEY, an individual; )
    PAUL GRADY, an individual; TERRY   )   (4)   BREACH OF IMPLIED IN LAW
19   VICKERY, an individual, and DOES 1 through )       CONTRACT
    50, inclusive,               )
20                               )   (5)   VIOLATION OF CIVIL CODE §§
          Defendants             )       1709 AND 1710 (DECEIT)
21                               )
                              )   (6)   VIOLATION OF CIVIL CODE §
22                               )       1572 (ACTUAL FRAUD)
                              )
23                               )   (7)   VIOLATION OF BUSINESS AND
                              )       PROFESSIONS CODE §17200 ET
24                               )       SEQ.
                              )
25                               )   (8)   OPEN BOOK ACCOUNTING
                              )
26                               )   [Jury Trial Demanded]

27

28     Plaintiff and KEITH A. FINK & ASSOCIATES, a sole proprietorship dba Keith A. Fink &

1   Associates hereby alleges as follows:

2                         <u>VENUE AND PARTIES</u>

3       1.      Plaintiff KEITH A. FINK & ASSOCIATES, a sole proprietorship dba Keith A. Fink &

4   Associates (hereinafter "FINK LAW FIRM" and/or "Plaintiff") is and was, and all times relevant hereto,

5   a sole proprietorship doing business as Keith A. Fink & Associates, and located in and doing business

6   in the County of Los Angeles, State of California.

7       3.      Defendant CONSUMER DIRECT OF AMERICA ( hereinafter "CDA" and/or

8   "Defendants") is, and at all times relevant herein has been, a Nevada Corporation which is authorized

9   to conduct business in the State of California.

10      4.      Defendant MICHAEL A. BARRON (hereinafter "Mr. BARRON" and/or "Defendants")

11  is, and at all times relevant herein has been, an individual residing in Clark County, Nevada and is the

12  Chairman and Chief Executive Officer of CDA.

13      5.      Defendant PAUL GRADY (hereinafter "MR. GRADY" and/or "Defendants") is, and at

14  all times relevant herein has been, an individual residing in Clark County, Nevada and is the Executive

15  Vice President of CDA.

16      6.      Defendant JOSEPH COSIO-BARRON (hereinafter "MR. COSIO-BARRON" and/or

17  "Defendants") is, and at all times relevant herein has been, an individual residing in Clark County,

18  Nevada and is CDA's Corporate Counsel and an agent of CDA. Plaintiff is informed, believes, and on

19  that basis alleges that MR. COSIO-BARRON maintains a residence in San Francisco, California.

20      7.      Defendant WAYNE BAILEY (hereinafter "MR. BAILEY"and/or "Defendants") is, and

21  at all times relevant herein has been, an individual residing in the State of Utah and is the President

22  and the Chief Financial Officer of CDA.

23      8.      Defendant TERRY VICKERY (hereinafter "MR. VICKERY"and/or "Defendants") is,

24  and at all times relevant herein has been, an individual residing in Clark County, Nevada and Colorado

25  and is a managing agent/employee of CDA.

26      9.      Plaintiff is unaware of the true names and capacities, whether individual, corporate,

27  associate or otherwise, of Defendants DOES 1 through 50 (hereinafter "DOES"and/or "Defendants"),

28  inclusive, and therefore sues said Does by such fictitious names. Plaintiff will seek leave of Court to

1  amend this Complaint to show the true names and capacities of such DOES when the same has been

2  ascertained. Plaintiff is informed, believes, and thereupon alleges that each of the fictitiously named

3  Defendants are responsible to Plaintiff for the injuries suffered and alleged herein, or are subject to the

4  jurisdiction of the Court as a necessary party for the relief herein requested.

5       10.    Plaintiff is informed, believes, and thereupon alleges that each DOE is now, and

6  was at all times mentioned herein, the agent, principal, partner, joint venturer, employee or alter ego of

7  the remaining Defendants, and that all of the acts and conduct alleged herein were performed within

8  the course and scope and in the furtherance of such agency, partnership, joint venture, employment or

9  alter ego relationship.

10      11.    Venue is properly laid in this Court as the torts were committed in Los Angeles County,

11  California and the contracts sued upon was negotiated, executed, and substantially performed in Los

12  Angeles County, California.

13                              **FACTUAL ALLEGATIONS**

14      12.  Plaintiff repeats, re-alleges, and incorporates herein by this reference Paragraphs 1

15  through 11, as though fully set forth herein.

16      13.   $8 + 4 + 12 = 0$. Some things just do not add up. According to CDA, eight law suits

17  litigated in four states for over twelve months equal zero dollars in legal fees. Suffice to say, Plaintiff

18  has been defrauded. In furtherance of its expansionist goals, in early 2002, CDA embarked upon a

19  campaign to acquire small but successful mortgage brokerages around the country and add them to

20  CDA's nation-wide umbrella of net branches. Defendants seemed to view CDA's expansion as

21  manifest destiny. In furtherance of this self-sanctioned destiny, Defendants were allegedly not

22  constrained by cost, contracts, or past promises. Defendants sought the proverbial "something for

23  nothing" by taking what they wanted without paying for it. Unfortunately for CDA, the law firm which

24  shielded it from the alledged natural repercussions of Defendants' business practices has done its own

25  arithmetic. Eight law suits plus zero dollars paid plus scores of empty promises equals this Complaint.

26      14.    In late 2003, Defendants found themselves forced to litigate a matter in California

27  which exposed not only CDA but each instant indivdual defendant to a thirteen million dollar Cross-

28  complaint. Convinced that the attorney who filed the complaint for CDA was incompetent to handle

1   the matter, Defendants looked for more effective counsel to shield them from the massive exposure and

2   to tenaciously prosecute their claims.  It is against this back drop that Defendants were introduced to

3   Keith A. Fink ("Mr. Fink") of Keith A. Fink & Associates.

4        15.   In November of 2003, CDA filed a lawsuit against Las Vegas Mortgage Company and

5   Raymond and Sheree Williams in Orange County, California.  The suit arose from the failed

6   acquisition of Raymond and Sheree Williams' company, Las Vegas Mortgage Company ("LVMC").

7   The Williams cross-complained against CDA, MR. BARRON, MR. GRADY, MR. COSIO-BARRON,

8   MR. BAILEY, and MR. VICKERY for failing to issue unrestricted stock in consideration for acquiring

9   LVMC, as called for by acquisition agreement, and demanded damages totaling thirteen million dollars

10  ($13,000,000.00).[1]  The Cross-complaint was designed to bankrupt CDA and the instant individual

11  defendants.  However, when CDA and the individuals asked for help, Plaintiff was there to remedy the

12  situation.  Thus began Plaintiff's relationship with Defendants.

13       16.   Beginning in or about November 2003 and continuing, Plaintiff first provided legal

14  services to Defendants in defense of the following actions brought by and against Defendants:

15  Consumer Direct of America v. Lending Services Corporation (hereinafter the "Williams Matter") and

16  thereafter Jasperson v. Consumer Direct of America, Inc., (hereinafter the "Jasperson Matter").  In

17  addition, Defendants sought Plaintiff's legal advice on various employment matters from time to time

18  and Plaintiff provided Defendants with the requested advice and legal work.  This work included

19  reviewing employment agreements and the employee handbook and making suggestions as to

20  recommended revisions.

21       17.   On or about December 30, 2003, Plaintiff and CDA entered into a written fee

22  agreement wherein CDA agreed to pay Plaintiff for its legal services.  The essential terms of the Fee

23  Agreement were: (1) Plaintiff "agree[s] to provide those legal services that are reasonably required to

24  represent [Defendants] and shall take reasonable steps to keep [Defendants] informed of progress and

25  to respond to [Defendants'] inquiries," (2) "[Mr. Fink's] billing rate is $400 per hour.  Associates bill

26  at the rate of $260 per hour," and (3) "All bills are due on the 10th day after their date and are to be paid

27

28     [1]The Williams family filed two related cases in Clark County, Nevada under case numbers
A467140 and A467141.  These matters were successfully resolved in the same settlement.

---

4
COMPLAINT

1  by [Defendants] on or before that date." Defendants were permitted to pay Plaintiff's bills in either

2  cash or, in lieu thereof, issue Plaintiff stock in CDA with said issuance equaling the total sum of money

3  owed. During the course of the representation, MR. BARRON became concerned about the likely

4  dilution of existing shareholders' percentage ownership of the company if Plaintiff were paid in stock.

5  Consequently, Plaintiff offered to accept cash only as payment instead of stock. Defendants accepted

6  this offer and the Fee Agreement was amended accordingly.

7        18.   Per the parties Fee Agreement, Defendants were obligated to pay all monies due to

8  Plaintiff within ten days of the date of the billing statement. Per the Fee Agreement, Defendant also

9  had ten days in which to raise questions regarding the bills, otherwise, if no questions were raised,

10  Plaintiff would rely on this silence as Defendants' acceptance of the bill and account as stated.

11       19.   Throughout the representation, Plaintiff provided Defendants with monthly billing

12  statements describing the legal services Plaintiff performed on Defendants' various matters. Not once

13  did Defendants complain that any of the work performed by Plaintiff was unnecessary or that the time

14  Plaintiff spent on a particular task was excessive. In fact, Defendants repeatedly praised Plaintiff for

15  Plaintiff's good work on behalf of Defendants giving Mr. Fink such descriptive nicknames as "Chief,"

16  "Bulldog," "CDA's Red Adair," "the Fifth Head of CDA," "Mike Barron's Wingman" and "Assassin."

17       19.   Plaintiff's effective representation in the Williams Matter saved CDA approximately

18  2.4 million shares of stock totaling approximately $1,400,000.00. This unqualified success led

19  Defendants to look to Plaintiff for all of their litigation needs, no matter the size, subject matter,

20  jurisdiction, or venue.

21       20.   Just prior to the conclusion of the Williams Matter, Defendants asked Plaintiff to

22  substitute into the "Jasperson Matter." Both CDA and MR. BARRON are named as Defendants in

23  that action. The Jasperson Matter is strikingly similar to the Williams Matter. CDA acquired the

24  Jasperson's business assets and hired the Jaspersons to manage a branch of CDA in Nevada.[2] The

25  relationship quickly deteriorated when CDA allegedly failed to deliver the freely trading CDA stock to

26  pay for the assets as called for in the acquisition agreement. Plaintiff was admitted to the Nevada Bar

27  _____

28      [2]CDA's branch offices operate throughout the country under the name Consumer Direct
    Lending ("CDL").

1   *pro hac vice* in order to fight for CDA and MR. BARRON.

2       21.   Thrilled with Plaintiff's representation and results, Defendants repeatedly brought all of

3   their litigation matters to Plaintiff, regardless of size.  Plaintiff was retained in another California

4   action entitled GE Business Productivity Solutions v. Consumer Direct of America ("GE Matter").

5   The GE Matter revolved around an internet bill which CDA allegedly incurred but never paid.

6   Plaintiff resolved the matter to Defendants' satisfaction.  Plaintiff was also asked to represent CDA's

7   interests in Cal Realty v. Keane et al.

8       22.   CDA also retained Plaintiff to represent Ocean West Funding, a California corporation

9   CDA was then negotiating to purchase, in Citicorp Mortgage v. Ocean West Enterprises.[1]  CDA

10  recommended Plaintiff to Ocean West Funding to represent Ocean West Funding in lawsuits pending

11  in California and Illinois based upon Plaintiff's past performance on CDA's behalf and CDA

12  guaranteed that Plaintiff's legal fees would be paid.

13      23.   Despite Plaintiff's string of successes and legal services provided, Plaintiff was not

14  compensated in full.  Defendants repeatedly promised Plaintiff that full payment would be

15  forthcoming.  Based upon these assurances and representations, Plaintiff agreed to represent

16  Defendants in Consumer Direct of America v. Consulting Services, Consulting Services v. Consumer

17  Direct of America, and a related matter entitled Two Barrett Lakes Office Center v. South County

18  Financial Services (hereinafter, collectively the "Consulting Services Matters").

19      24.   These suits revolved around the now familiar theme, the acquisition of a smaller

20  mortgage brokerage, the hiring of the target company's principals, and CDA's alleged failure to issue

21  stock as payment for the company or alleged failure to issue freely trading stock for the acquisition.

22  The issue over the proper jurisdiction for the Consulting Services Matters necessitated many motions

23  and scores of hours at a great expense to Plaintiff.  Throughout the course of Plaintiff's involvement in

24  the Consulting Services Matters, MR. BARRON and MR. COSTO-BARRON repeatedly promised

25  Plaintiff that Plaintiff would be compensated in full for all of its work.

26      25.   With these promises ringing in Mr. Fink's his ears, Plaintiff also agreed to represent

27

28      [1]Plaintiff is informed, believes, and on that basis alleges that CDA eventually acquired Ocean
West Funding.

1    CDA in another federal case entitled Consumer Direct of America v. Ferguson et al. (hereinafter the

2    "Ferguson Matter") and further agreed to defend CDA, MR. BARRON, MR. COSIO-BARRON, and

3    MR. VICKERY in an almost identical action entitled Williamson et al. v. Consumer Direct of America

4    et al. (hereinafter the "Williamson Matter") which was filed in the Western District of North Carolina.

5    In response to the complaint in the Williamson Matter, Plaintiff successfully persuaded a federal judge

6    sitting in the Western District of North Carolina to divest North Carolina of jurisdiction and transfer

7    the matter to the District of Nevada for consolidation with the Ferguson Matter. This victory not only

8    saved CDA the cost of hiring local counsel in North Carolina but ensured that CDA's opposition

9    would have to endure that expense to its severe disadvantage.

10       26.    Throughout the attorney-client relationship, Defendants expressed their extreme

11    satisfaction and confidence in Plaintiff's legal services with jocular praise and jubilant appreciation.

12    Defendants commended Plaintiff for its work ethic, recognizing that Plaintiff worked evenings and

13    weekends and made itself available to Defendants outside of regular business hours. .

14       27.    To date, Defendants have incurred over $800,000.00 in legal fees and costs which they

15    have repeatedly orally promised to pay and repeatedly failed to pay. It seems that Defendants have

16    developed a pattern of promising to pay and failing to deliver (e.g. the Williams Matter, Jasperson

17    Matter, GE Matter, Consulting Services Matters, Ferguson Matter and Williamson Matter). Plaintiff

18    represented Defendants in eight lawsuits, in four states, for over twelve months, and has benefitted by

19    not one dime. It is time for CDA to pay its bills.

20    **FIRST CAUSE OF ACTION**

21    **(BREACH OF CONTRACT AGAINST ALL DEFENDANTS AND DOES)**

22       28.    Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 27,

23    as though fully set forth herein.

24       29.    On or about December 30, 2003, Plaintiff and CDA entered into a written fee

25    agreement wherein CDA agreed to pay Plaintiff for its legal services. The essential terms of the Fee

26    Agreement were: (1) Plaintiff "agree[s] to provide those legal services that are reasonably required to

27    represent [Defendants] and shall take reasonable steps to keep [Defendants] informed of progress and

28    to respond to [Defendants'] inquiries," (2) "[Mr. Fink's] billing rate is $400 per hour. Associates bill

7
COMPLAINT

1   at the rate of $260 per hour," and (3) "All bills are due on the 10th day after their date and are to be paid

2   by [Defendants] on or before that date." Defendants were permitted to pay Plaintiff's bills in either

3   cash or, in lieu thereof, issue Plaintiff stock in CDA with said issuance equaling the total sum of

4   money owed. During the course of the representation, MR. BARRON became concerned about the

5   likely dilution of existing shareholders' percentage ownership of the company if Plaintiff were paid in

6   stock. Consequently, Plaintiff offered to accept cash only as payment instead of stock. Defendants

7   accepted this offer and the Fee Agreement was amended accordingly.

8       30.   The fee agreement was entered into in connection with the Williams and Jasperson

9   Matters. Plaintiff's services included legal representation of CDA, MR. BARRON, MR. COSIO-

10   BARRON, MR. BAILEY, MR. GRADY and MR. VICKERY in the Williams matter and CDA and

11   MR. BARRON in the Jasperson Matter.

12       31.   Defendants accepted Plaintiff's services with the knowledge that Plaintiff expected to

13   be compensated therefor and each and every defendant received a benefit from Plaintiff's legal

14   services.

15       32.   Plaintiff performed all of its promissory obligations to Defendants. Plaintiff has at all

16   times herein fully performed the terms and conditions of the agreement for services in the manner

17   specified by the Defendants, except where said performance was excused or prevented by the conduct

18   of the Defendants.

19       33.   Defendants breached the terms of the fee agreement by failing to pay Plaintiff for the

20   legal services Plaintiff rendered on Defendants' behalf.

21       34.   Plaintiff has suffered damages as a direct and proximate result of the Defendants'

22   breach of their promises to pay Plaintiff the full amount of legal fees due and owing.

23       35.   Plaintiff's damages are certain, foreseeable, and measurable consequences of

24   Defendants' breach. As a direct and proximate result of the Defendants' breach, Plaintiff has been

25   damaged in an amount according to proof, for outstanding legal fees plus interest accrued and growing,

26   owed by Defendants to Plaintiff.

27       36.   In the alternative, Plaintiff is entitled to quantum meruit, i.e., the reasonable value of the

28   services rendered to Defendants.

1   amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by

2   Defendants to Plaintiff.

3       43.    In the alternative, Plaintiff is entitled to quantum meruit, i.e., the reasonable value of the

4   services rendered to Defendants in order to prevent Defendants' unjust enrichment.

5                                **THIRD CAUSE OF ACTION**

6   **(BREACH OF IMPLIED IN FACT CONTRACT AGAINST ALL DEFENDANTS AND DOES)**

7       44.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each

8   and every allegation contained in Paragraphs 1 through 43, inclusive.

9       45.    Plaintiff and Defendants have at all times acted consistently with the existence of a

10  valid contract for the rendering of Plaintiff's professional services. Plaintiff performed its duties

11  arising under the contract for approximately one year, save those obligations which were excused by

12  Defendants' breach. Throughout that time, Defendants accepted the benefit of Plaintiff's services with

13  full knowledge that Plaintiff expected to be financially compensated for its professional efforts.

14      46.    Defendants have breached the implied in fact contract by failing and refusing to

15  financially compensate Plaintiff for services rendered. As a result, Defendants have been unjustly

16  enriched by benefitting from legal services for which they did not pay.

17      47.    Plaintiff's damages are a certain, foreseeable, and measurable consequence of

18  Defendants' breach. As a direct and proximate result of said breach, Plaintiff has been damaged in an

19  amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by

20  Defendants to Plaintiff.

21                                **FOURTH CAUSE OF ACTION**

22  **(BREACH OF IMPLIED IN LAW CONTRACT AGAINST ALL DEFENDANTS AND DOES)**

23      48.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each

24  and every allegation contained in Paragraphs 1 through 47, inclusive.

25      49.    Plaintiff has rendered professional services to Defendants from which Defendants

26  have benefitted. Said services were not rendered gratuitously but with the mutual understanding that

27  Plaintiff would be paid for the services rendered. Throughout that time, Defendants accepted the

28  benefit of Plaintiff's services with full knowledge that Plaintiff expected to be financially compensated

1   for its professional efforts.

2         50.      Defendants have failed to compensate Plaintiff for the services it rendered.  As a result,

3   Defendants have been unjustly enriched by benefitting from legal services for which they did not pay.

4         51.      Plaintiff's damages are a certain, foreseeable, and measurable consequence of

5   Defendants' breach.  As a direct and proximate result of said breach, Plaintiff has been damaged in an

6   amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by

7   Defendants to Plaintiff.  Plaintiff seeks to recover the reasonable value of its services.

8                                 **FIFTH CAUSE OF ACTION**

9   (VIOLATION OF <u>CIVIL CODE</u> §§1709 and 1710 (DECEIT) AGAINST DEFENDANTS CDA,

10                MR. BARRON, MR. COSIO-BARRON AND DOES)

11        52.      Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 51

12  as though fully set forth herein.

13        53.      Since November of 2003 and continuing until December of 2004, MR. BARRON and

14  MR. COSIO-BARRON repeatedly represented to Plaintiff that CDA would pay Plaintiff for the legal

15  services it rendered.  These representations of fact were false, false at the time they were made, and

16  MR. BARRON and MR. COSIO-BARRON were aware of their falsity at the time they were made.

17        54.      MR. BARRON and MR. COSIO-BARRON falsely represented their and CDA's

18  intention to pay Plaintiff and the false representations were made with the intent that Plaintiff rely on

19  them.  Plaintiff actually relied on CDA, MR. BARRON and MR. COSIO-BARRON's false

20  representations of fact by agreeing to represent Defendants and continuing to represent Defendants for

21  one year.  Plaintiff's reliance was reasonable as Plaintiff was introduced to Defendants through a

22  mutual friend and remained reasonable throughout the representation due to Plaintiff's growing

23  friendship with Defendants and Defendants' promises and sporadic partial payments.

24        55.      CDA was aware that MR. BARRON and MR. COSIO-BARRON, who are CDA's

25  officers, directors, and managing agents, had made false representations regarding CDA's ability and

26  intention to pay Plaintiff for its services and failed to take any reasonable steps to prevent, stop, or

27  remedy the fraudulent statements.

28        56.      CDA, MR. BARRON and MR. COSIO-BARRON's fraudulent statements were made

                                          11

1    with malice and a conscious disregard for the probable consequences their statements would cause

2    Plaintiff.

3       57.    As a direct and proximate result of CDA, MR. BARRON and MR. COSIO-BARRON's

4    statements, Plaintiff has been damaged in an amount to be proven at trial. Defendants' conduct and

5    actions were done with malice, fraud, or oppression, and reckless disregard of Plaintiff's rights.

6    Defendants engaged in offensive conduct despite their awareness of the effect on Plaintiff. As a result

7    of these and other actions, Plaintiff is entitled to punitive and exemplary damages.

8                             **SIXTH CAUSE OF ACTION**

9    **(VIOLATION OF CIVIL CODE § 1572 (ACTUAL FRAUD) AGAINST DEFENDANTS CDA,**

10                  **MR. BARRON, MR. COSIO-BARRON AND DOES)**

11       58.    Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 57,

12    as though fully set forth herein.

13       59.    Since November of 2003 and continuing until December of 2004, MR. BARRON and

14    MR. COSIO-BARRON repeatedly represented to Plaintiff that CDA would pay Plaintiff for the legal

15    services they rendered. These representations of fact were false, false at the time they were made, and

16    MR. BARRON and MR. COSIO-BARRON were aware of their falsity at the time they were made.

17       60.    MR. BARRON and MR. COSIO-BARRON falsely represented their and CDA's

18    intention to pay Plaintiff and the false representations were made with the intent that Plaintiff rely on

19    them. Plaintiff actually relied on MR. BARRON and MR. COSIO-BARRON's false representations

20    of fact by entering into the fee agreement with CDA and by continuing to represent Defendants in each

21    matter as they arose. Prior to each new matter, MR. BARRON and MR. COSIO-BARRON assured

22    Plaintiff that Plaintiff would be paid for each and every matter. Plaintiff's reliance was reasonable as

23    Plaintiff was introduced to Defendants through a mutual friend and remained reasonable throughout

24    the representation due to Plaintiff's growing friendship with Defendants and Defendants' sporadic

25    partial payments and repeated oral assurances that Plaintiff would be paid.

26       61.    CDA was aware that MR. BARRON and MR. COSIO-BARRON, who are CDA's

27    officers, directors, and managing agents, had made false representations regarding CDA's ability and

28    intention to pay Plaintiff for its services and failed to take any reasonable steps to prevent, stop, or

02/25/2005  09:46    7024526298                    BELLON MANINGO                PAGE  13/18
    02/18/2005  09:24    7023634107
                                                   MORTENSON & RAFIE
                                                                                 PAGE  04/09

1   remedy the fraudulent statements.

2       62.    MR. BARRON and MR. COSIO-BARRON's fraudulent statements were made with

3   malice and a conscious disregard for the probable consequences their statements would cause Plaintiff.

4       63.    As a direct and proximate result of MR. BARRON and MR. COSIO-BARRON's

5   statements, Plaintiff has been damaged in an amount to be proven at trial. Defendants' conduct and

6   actions were done with malice, fraud, or oppression, and reckless disregard of Plaintiff's rights.

7   Defendants engaged in offensive conduct despite their awareness of the effect on Plaintiff. As a result

8   of these and other actions, Plaintiff is entitled to punitive and exemplary damages.

9                           SEVENTH CAUSE OF ACTION

10    (VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 ET SEQ. AGAINST ALL

11                           DEFENDANTS AND DOES)

12      64.    Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 63,

13  as though fully set forth herein.

14      65.    Plaintiff is informed and believe that Defendants engaged in acts of fraudulent

15  business practices and untrue or misleading advertisements in violation of numerous provisions under

16  federal and state statutory and common law, including but not limited to the Unfair Competition Law

17  (California Business & Professions Code §§ 17200 et seq. and 17500 et seq.) and the Consumer Legal

18  Remedies Act (Civil Code § 1770 et seq.)

19      66.    California Business and Professions Code §17200 et seq., provides that unfair

20  competition shall mean and include "all unlawful, unfair or fraudulent business act or practices and

21  unfair, deceptive, untrue or misleading advertising."

22      67.    Defendants fall within the definition of "person" as set forth at Business & Professions

23  Code § 17203 and §17506.

24      68.    Plaintiff is informed, believes, and thereon alleges that Defendants have maintained

25  fraudulent business practices by engaging in practices including but not limited to the following:

26  falsely stating that Defendants intend to pay for legal services, falsely stating that Defendants have the

27  ability to pay for legal services, and continuing to misrepresent their intention and ability to pay for

28  legal services over a one year period in order to induce their attorneys to continue to provide them with

                                    13
                                 COMPLAINT

1  | legal representation.  Plaintiff is not Defendants only victims.  Defendants have engaged in similar

2  | conduct with at least three other law firms within the past two years.

3  |    69.    Plaintiff is informed, believes, and thereupon alleges that as a direct and proximate

4  | result of Defendants' unfair and fraudulent business practices, Defendants have received and will

5  | continue to receive ill-gotten gains.  Plaintiff is therefore entitled to disgorgement of all monies saved

6  | as a result of Defendants' fraud.

7  |    70.    Defendants' conduct and actions were done with malice, fraud, or oppression, and

8  | reckless disregard of Plaintiff's rights.  Defendants engaged in offensive conduct despite their

9  | awareness of the effect on Plaintiff.  As a result of these and other actions, Plaintiff is entitled to

10 | punitive and exemplary damages.

11 |                        **EIGHTH CAUSE OF ACTION**

12 |      **(OPEN BOOK ACCOUNTING AGAINST ALL DEFENDANTS AND DOES)**

13 |    71.    Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 69,

14 | as though fully set forth herein.

15 |    72.    Plaintiff has received some monetary payment for the legal services Plaintiff provided

16 | to Defendants.

17 |    73.    Plaintiff is informed and believes and thereon alleges that Defendants has provided

18 | Plaintiff with some money as payment for legal services rendered, but not the entire remaining balance

19 | due.

20 |    74.    Plaintiff is informed, believes, and thereon alleges that Plaintiff is entitled to an open

21 | book accounting for the monies owed to Plaintiff by Defendants.

22 |

23 | WHEREFORE, Plaintiff prays for judgment as follows:

24 |    1.    For general and compensatory damages, including prejudgment interest, in accordance

25 |          with proof at time of trial on the First and Second Causes of Action;

26 |    2.    For quantum meruit on the Third and Fourth Causes of Action;

27 |    3.    For general and punitive damages to be determined at trial on the Fifth and Sixth

28 |

1   Causes of Action;

2   3.    For restitution and disgorgement, injunctive relief, and any further relief the court

3         deems just and proper on the Seventh Cause of Action;

4   4.    For an open book accounting, general damages according to proof, and any further

5         relief the court deems just and proper on the Eighth Cause of Action;

6

7   5.    For Plaintiff's costs and attorneys fees;

8   6.    For such other and further relief as the Court may deem just and proper.

9

10

11

12  DATED: January 2 1, 2005                         KEITH A FINK & ASSOCIATES

13

14

15                                       By _____
                                            Keith A. Fink
16                                          Jack Rifenbark
                                            Attorneys for Plaintiff
17                                          KEITH A. FINK & ASSOCIATES,
                                            a sole proprietorship dba KEITH A. FINK
18                                          & ASSOCIATES

19

20

21

22

23

24

25

26

27

28

                                      15
                                   COMPLAINT

1  Keith A. Fink, Bar No. 146841
   Jack Rifenbark, Bar No. 227698
2  KEITH A. FINK & ASSOCIATES
   11500 Olympic Boulevard, Suite 316
3  Los Angeles, California 90064
   Telephone: (310) 268-0780
4
   Sarah E. Hernandez, Bar No. 206305
5  LAW OFFICES OF SARAH E. HERNANDEZ
   19425 B Soledad Canyon Road, #463
6  Canyon Country, CA 91351
   Telephone: (661)313-2893
7
8  Attorneys for Plaintiff
   KEITH A. FINK & ASSOCIATES,
9  a sole proprietorship dba KEITH A. FINK & ASSOCIATES

```
                              FILED
                    LOS ANGELES SUPERIOR COURT

                         FEB 1 8 2005

                   JOHN A. CLARKE, CLERK

                   BY C. JASPER, DEPUTY
```

10
11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              COUNTY OF LOS ANGELES – CENTRAL DISTRICT

13  KEITH A. FINK & ASSOCIATES, a sole          )   CASE NO. BC 327620
    proprietorship dba Keith A. Fink & Associates, )
14                                               )   FIRST AMENDED COMPLAINT
                 Plaintiffs,                      )   FOR:
15                                               )
          vs.                                    )   (1)   BREACH OF CONTRACT
16                                               )
    CONSUMER DIRECT OF AMERICA, a                )   (2)   BREACH OF ORAL CONTRACT
17  Nevada Corporation; FREEDOM                  )
    MORTGAGE CORPORATION dba OCEAN               )   (3)   BREACH OF IMPLIED IN FACT
18  WEST FUNDING; MICHAEL A. BARRON,             )         CONTRACT
    an individual; JOSEPH COSIO-BARRON, an       )
19  individual; WAYNE BAILEY, an individual;     )   (4)   BREACH OF IMPLIED IN LAW
    PAUL GRADY, an individual; TERRY             )         CONTRACT
20  VICKERY, an individual, and DOES 1 through   )
    50, inclusive,                               )   (5)   VIOLATION OF CIVIL CODE §§
21                                               )         1709 AND 1710 (DECEIT)
                 Defendants.                      )
22                                               )   (6)   VIOLATION OF CIVIL CODE §
                                                 )         1572 (ACTUAL FRAUD)
23                                               )
                                                 )   (7)   VIOLATION OF BUSINESS AND
24                                               )         PROFESSIONS CODE §17200 ET
                                                 )         SEQ.
25                                               )
                                                 )   (8)   OPEN BOOK ACCOUNTING
26                                               )
                                                 )
27                                               )   [Jury Trial Demanded]
28

                                        1
                          FIRST AMENDED COMPLAINT

1    Plaintiff and KEITH A. FINK & ASSOCIATES, a sole proprietorship dba Keith A. Fink &

2    Associates hereby alleges as follows:

3                      **VENUE AND PARTIES**

4       1.    Plaintiff KEITH A. FINK & ASSOCIATES, a sole proprietorship dba Keith A. Fink &

5    Associates (hereafter "FINK LAW FIRM" and/or "Plaintiff") is and was, and all times relevant hereto,

6    a sole proprietorship doing business as Keith A. Fink & Associates, and located in and doing business

7    in the County of Los Angeles, State of California.

8       2.    Defendant CONSUMER DIRECT OF AMERICA ( hereinafter "CDA" and/or

9    "Defendants") is, and at all times relevant herein has been, a Nevada Corporation which is authorized

10    to conduct business in the State of California.

11       3.    Defendant FREEDOM MORTGAGE CORPORATION dba OCEAN WEST

12    FUNDING( hereinafter "OCEAN WEST" and/or "Defendants") is, and at all times relevant herein has

13    been, a business entity form unknown which is authorized to conduct business and conducts substantial

14    business in the State of California.

15       4.    Defendant MICHAEL A. BARRON (hereinafter "Mr. BARRON" and/or "Defendants")

16    is, and at all times relevant herein has been, an individual residing in Clark County, Nevada and is the

17    Chairman and Chief Executive Officer of CDA.

18       5.    Defendant PAUL GRADY (hereinafter "MR. GRADY" and/or "Defendants") is, and at

19    all times relevant herein has been, an individual residing in Clark County, Nevada and is the Executive

20    Vice President of CDA.

21       6.    Defendant JOSEPH COSIO-BARRON (hereinafter "MR. COSIO-BARRON" and/or

22    "Defendants") is, and at all times relevant herein has been, an individual residing in Clark County,

23    Nevada and is CDA's Corporate Counsel and an agent of CDA. Plaintiff is informed, believes, and on

24    that basis alleges that MR. COSIO-BARRON maintains a residence in San Francisco, California.

25       7.    Defendant WAYNE BAILEY (hereinafter "MR. BAILEY"and/or "Defendants") is, and

26    at all times relevant herein has been, an individual residing in the State of Utah and is the President

27    and the Chief Financial Officer of CDA.

28       8.    Defendant TERRY VICKERY (hereinafter "MR. VICKERY"and/or "Defendants") is,

p.4

1    and at all times relevant herein has been, an individual residing in Clark County, Nevada and Colorado

2    and is a managing agent/employee of CDA.

3         9.      Plaintiff is unaware of the true names and capacities, whether individual, corporate,

4    associate or otherwise, of Defendants DOES 1 through 50 (hereinafter "DOES" and/or "Defendants"),

5    inclusive, and therefore sues said Does by such fictitious names. Plaintiff will seek leave of Court to

6    amend this Complaint to show the true names and capacities of such DOES when the same has been

7    ascertained.  Plaintiff is informed, believes, and thereupon alleges that each of the fictitiously named

8    Defendants are responsible to Plaintiff for the injuries suffered and alleged herein, or are subject to the

9    jurisdiction of the Court as a necessary party for the relief herein requested.

10        10.     Plaintiff is informed, believes, and thereupon alleges that each DOE is now, and

11   was at all times mentioned herein, the agent, principal, partner, joint venturer, employee or alter ego of

12   the remaining Defendants, and that all of the acts and conduct alleged herein were performed within

13   the course and scope and in the furtherance of such agency, partnership, joint venture, employment or

14   alter ego relationship.

15        11.     Venue is properly laid in this Court as the torts were committed in Los Angeles County,

16   California and the contracts sued upon was negotiated, executed, and substantially performed in Los

17   Angeles County, California.

18                              **FACTUAL ALLEGATIONS**

19        12.     Plaintiff repeats, re-alleges, and incorporates herein by this reference Paragraphs 1

20   through 11, as though fully set forth herein.

21        13.     $8 + 4 + 12 = 0$.  Some things just do not add up.  According to CDA, eight law suits

22   litigated in four states for over twelve months equal zero dollars in legal fees.  Suffice to say, Plaintiff

23   has been defrauded.  In furtherance of its expansionist goals, in early 2002, CDA embarked upon a

24   campaign to acquire small but successful mortgage brokerages around the country and add them to

25   CDA's nation-wide umbrella of net branches.  Defendants seemed to view CDA's expansion as

26   manifest destiny.  In furtherance of this self-sanctioned destiny, Defendants were allegedly not

27   constrained by cost, contracts, or past promises. Defendants sought the proverbial "something for

28   nothing" by taking what they wanted without paying for it.  Unfortunately for CDA, the law firm which

1   shielded it from the alleged natural repercussions of Defendants' business practices has done its own

2   arithmetic. Eight law suits plus zero dollars paid plus scores of empty promises equals this Complaint.

3          14.     In late 2003, Defendants found themselves forced to litigate a matter in California

4   which exposed not only CDA but each instant individual defendants to a thirteen million dollar Cross-

5   complaint. Convinced that the attorney who filed the complaint for CDA was incompetent to handle

6   the matter, Defendants looked for more effective counsel to shield them from the massive exposure and

7   to tenaciously prosecute their claims. It is against this back drop that Defendants were introduced to

8   Keith A. Fink ("Mr. Fink") of Keith A. Fink & Associates.

9          15.     In November of 2003, CDA filed a lawsuit against Las Vegas Mortgage Company and

10  Raymond and Sheree Williams in Orange County, California. The suit arose from the failed

11  acquisition of Raymond and Sheree Williams' company, Las Vegas Mortgage Company ("LVMC").

12  The Williams cross-complained against CDA, MR. BARRON, MR. GRADY, MR. COSIO-BARRON,

13  MR. BAILEY, and MR. VICKERY for failing to issue unrestricted stock in consideration for acquiring

14  LVMC, as called for by acquisition agreement, and demanded damages totaling thirteen million dollars

15  ($13,000,000.00).[1] The Cross-complaint was designed to bankrupt CDA and the instant individual

16  defendants. However, when CDA and the individuals asked for help, Plaintiff was there to remedy the

17  situation. Thus began Plaintiff's relationship with Defendants.

18         16.     Beginning in or about November 2003 and continuing, Plaintiff first provided legal

19  services to Defendants in defense of the following actions brought by and against Defendants:

20  Consumer Direct of America v. Lending Services Corporation (hereinafter the "Williams Matter") and

21  thereafter Caitlin Enterprises, Inc. v. Consumer Direct of America, Inc., (hereinafter the "Jasperson

22  Matter"). In addition, Defendants sought Plaintiff's legal advice on various employment matters from

23  time to time and Plaintiff provided Defendants with the requested advice and legal work. This work

24  included reviewing employment agreements and the employee handbook and making suggestions as to

25  recommended revisions.

26         17.     On or about December 30, 2003, Plaintiff and CDA entered into a written fee

27  _____

28  [1] The Williams family filed two related cases in Clark County, Nevada under case numbers
    A467140 and A467141. These matters were successfully resolved in the same settlement.

4

FIRST AMENDED COMPLAINT

1   agreement wherein CDA agreed to pay Plaintiff for its legal services. The essential terms of the Fee

2   Agreement were: (1) Plaintiff "agree[s] to provide those legal services that are reasonably required to

3   represent [Defendants] and shall take reasonable steps to keep [Defendants] informed of progress and

4   to respond to [Defendants'] inquiries." (2) "[Mr. Fink's] billing rate is $400 per hour. Associates bill

5   at the rate of $260 per hour." and (3) "All bills are due on the 10th day after their date and are to be paid

6   by [Defendants] on or before that date." Defendants were permitted to pay Plaintiff's bills in either

7   cash or, in lieu thereof, issue Plaintiff stock in CDA with said issuance equaling the total sum of money

8   owed. During the course of the representation, MR. BARRON became concerned about the likely

9   dilution of existing shareholders' percentage ownership of the company if Plaintiff were paid in stock.

10  Consequently, Plaintiff offered to accept cash only as payment instead of stock. Defendants accepted

11  this offer and the Fee Agreement was amended accordingly.

12          18.     Per the parties Fee Agreement, Defendants were obligated to pay all monies due to

13  Plaintiff within ten days of the date of the billing statement. Per the Fee Agreement, Defendant also

14  had ten days in which to raise questions regarding the bills, otherwise, if no questions were raised,

15  Plaintiff would rely on this silence as Defendants' acceptance of the bill and account as stated.

16          19.     Throughout the representation, Plaintiff provided Defendants with monthly billing

17  statements describing the legal services Plaintiff performed on Defendants' various matters. Not once

18  did Defendants complain that any of the work performed by Plaintiff was unnecessary or that the time

19  Plaintiff spent on a particular task was excessive. In fact, Defendants repeatedly praised Plaintiff for

20  Plaintiff's good work on behalf of Defendants giving Mr. Fink such descriptive nicknames as "Chief,"

21  "Bulldog," "CDA's Red Adair," "the Fifth Head of CDA," "Mike Barron's Wingman" and "Assassin."

22          20.     Plaintiff's effective representation in the Williams Matter saved CDA approximately

23  2.4 million shares of stock totaling approximately $1,400,000.00. This unqualified success led

24  Defendants to look to Plaintiff for all of their litigation needs, no matter the size, subject matter,

25  jurisdiction, or venue.

26          21.     Just prior to the conclusion of the Williams Matter, Defendants asked Plaintiff to

27  substitute into the "Jasperson Matter." Both CDA and MR. BARRON are named as Defendants in

28  that action. The Jasperson Matter is strikingly similar to the Williams Matter. CDA acquired the

1  Jasperson's business assets and hired the Jaspersons to manage a branch of CDA in Nevada.[2] The

2  relationship quickly deteriorated when CDA allegedly failed to deliver the freely trading CDA stock to

3  pay for the assets as called for in the acquisition agreement. Plaintiff was admitted to the Nevada Bar

4  *pro hac vice* in order to fight for CDA and MR. BARRON.

5      22.    Thrilled with Plaintiff's representation and results, Defendants repeatedly brought all of

6  their litigation matters to Plaintiff, regardless of size. Plaintiff was retained in another California

7  action entitled GE Business Productivity Solutions v. Consumer Direct of America ("GE Matter").

8  The GE Matter revolved around an internet bill which CDA allegedly incurred but never paid.

9  Plaintiff resolved the matter to Defendants' satisfaction. Plaintiff was also asked to represent CDA's

10  interests in Cal Realty v. Keane et al.

11      23.    CDA also retained Plaintiff to represent Ocean West Funding, a California corporation

12  CDA was then negotiating to purchase, in Citicorp Mortgage v. Ocean West Enterprises.[3] CDA

13  recommended Plaintiff to Ocean West Funding to represent Ocean West Funding in lawsuits pending

14  in California and Illinois based upon Plaintiff's past performance on CDA's behalf and CDA

15  guaranteed that Plaintiff's legal fees would be paid.

16      24.    Despite Plaintiff's string of successes and legal services provided, Plaintiff was not

17  compensated in full. Defendants repeatedly promised Plaintiff that full payment would be

18  forthcoming. Based upon these assurances and representations, Plaintiff agreed to represent

19  Defendants in Consumer Direct of America v. Consulting Services, Consulting Services v. Consumer

20  Direct of America, and a related matter entitled Two Barrett Lakes Office Center v. South County

21  Financial Services (hereinafter, collectively the "Consulting Services Matters").

22      25.    These suits revolved around the now familiar theme, the acquisition of a smaller

23  mortgage brokerage, the hiring of the target company's principals, and CDA's alleged failure to issue

24  stock as payment for the company or alleged failure to issue freely trading stock for the acquisition.

25

26      [2]CDA's branch offices operate throughout the country under the name Consumer Direct

27  Lending ("CDL").

28      [3]Plaintiff is informed, believes, and on that basis alleges that CDA eventually acquired Ocean
West Funding.

p.8

1   The issue over the proper jurisdiction for the Consulting Services Matters necessitated many motions

2   and scores of hours at a great expense to Plaintiff. Throughout the course of Plaintiff's involvement in

3   the Consulting Services Matters, MR. BARRON and MR. COSIO-BARRON repeatedly promised

4   Plaintiff that Plaintiff would be compensated in full for all of its work.

5        26.   With these promises ringing in Mr. Fink's his ears, Plaintiff also agreed to represent

6   CDA in another federal case entitled Consumer Direct of America v. Ferguson et al. (hereinafter the

7   "Ferguson Matter") and further agreed to defend CDA, MR. BARRON, MR. COSIO-BARRON, and

8   MR. VICKERY in an almost identical action entitled Williamson et al. v. Consumer Direct of America

9   et al. (hereinafter the "Williamson Matter") which was filed in the Western District of North Carolina.

10  In response to the complaint in the Williamson Matter, Plaintiff successfully persuaded a federal judge

11  sitting in the Western District of North Carolina to divest North Carolina of jurisdiction and transfer

12  the matter to the District of Nevada for consolidation with the Ferguson Matter. This victory not only

13  saved CDA the cost of hiring local counsel in North Carolina but ensured that CDA's opposition

14  would have to endure that expense to its severe disadvantage.

15        27.   Throughout the attorney-client relationship, Defendants expressed their extreme

16  satisfaction and confidence in Plaintiff's legal services with jocular praise and jubilant appreciation.

17  Defendants commended Plaintiff for its work ethic, recognizing that Plaintiff worked evenings and

18  weekends and made itself available to Defendants outside of regular business hours.

19        28.   To date, Defendants have incurred over $800,000.00 in legal fees and costs which they

20  have repeatedly orally promised to pay and repeatedly failed to pay. It seems that Defendants have

21  developed a pattern of promising to pay and failing to deliver (e.g. the Williams Matter, Jasperson

22  Matter, GE Matter, Consulting Services Matters, Ferguson Matter and Williamson Matter). Plaintiff

23  represented Defendants in eight lawsuits, in four states, for over twelve months, and has benefitted by

24  not one dime. It is time for CDA to pay its bills.

25                           FIRST CAUSE OF ACTION

26   (BREACH OF CONTRACT AGAINST CDA, MR. BARRON, MR. COSIO-BARRON, MR.

27             BAILEY, MR. GRADY, MR. VICKERY AND DOES)

28        29.   Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 28,

1   as though fully set forth herein.

2        30.     On or about December 30, 2003, Plaintiff and CDA entered into a written fee

3   agreement wherein CDA agreed to pay Plaintiff for its legal services. The essential terms of the Fee

4   Agreement were: (1) Plaintiff "agree[s] to provide those legal services that are reasonably required to

5   represent [Defendants] and shall take reasonable steps to keep [Defendants] informed of progress and

6   to respond to [Defendants'] inquiries," (2) "[Mr. Fink's] billing rate is $400 per hour   Associates bill

7   at the rate of $260 per hour," and (3) "All bills are due on the 10th day after their date and are to be paid

8   by [Defendants] on or before that date." Defendants were permitted to pay Plaintiff's bills in either

9   cash or, in lieu thereof, issue Plaintiff stock in CDA with said issuance equaling the total sum of

10  money owed. During the course of the representation, MR. BARRON became concerned about the

11  likely dilution of existing shareholders' percentage ownership of the company if Plaintiff were paid in

12  stock. Consequently, Plaintiff offered to accept cash only as payment instead of stock. Defendants

13  accepted this offer and the Fee Agreement was amended accordingly.

14       31.     The fee agreement was entered into in connection with the Williams and Jasperson

15  Matters. Plaintiff's services included legal representation of CDA, MR. BARRON, MR. COSIO-

16  BARRON, MR. BAILEY, MR. GRADY and MR. VICKERY in the Williams matter and CDA and

17  MR. BARRON in the Jasperson Matter.

18       32.     Defendants accepted Plaintiff's services with the knowledge that Plaintiff expected to

19  be compensated therefor and each and every defendant received a benefit from Plaintiff's legal

20  services.

21       33.     Plaintiff performed all of its promissory obligations to Defendants. Plaintiff has at all

22  times herein fully performed the terms and conditions of the agreement for services in the manner

23  specified by the Defendants, except where said performance was excused or prevented by the conduct

24  of the Defendants.

25       34.     Defendants breached the terms of the fee agreement by failing to pay Plaintiff for the

26  legal services Plaintiff rendered on Defendants' behalf.

27       35.     Plaintiff has suffered damages as a direct and proximate result of the Defendants'

28  breach of their promises to pay Plaintiff the full amount of legal fees due and owing.

36.     Plaintiff's damages are certain, foreseeable, and measurable consequences of Defendants' breach.  As a direct and proximate result of the Defendants' breach, Plaintiff has been damaged in an amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by Defendants to Plaintiff.

37.     In the alternative, Plaintiff is entitled to quantum meruit, i.e., the reasonable value of the services rendered to Defendants.

## SECOND CAUSE OF ACTION

## (BREACH OF ORAL CONTRACT AGAINST CDA, OCEAN WEST, MR. BARRON, MR. COSIO BARRON, MR. VICKERY AND DOES)

38.     Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 37, inclusive.

39.     Plaintiff and Defendants entered into an oral agreement for Plaintiff to represent CDA in the following actions: the GE Matter, the Ferguson Matter, Cal Realty v. Keane et al., the Williamson Matter, Citicorp Mortgage v. Ocean West Enterprises and the Consulting Services Matters. The terms of the oral agreement were (1) Plaintiff would represent CDA in the GE Matter, the Ferguson Matter, Cal Realty v. Keane et al., the Williamson Matter, Citicorp Mortgage v. Ocean West Enterprises and the Consulting Services Matters, (2) Plaintiff would charge CDA an hourly rate, and (3) CDA would pay Plaintiff's legal fees on a monthly basis so long as Plaintiff continued to represent CDA in the GE Matter, the Ferguson Matter, Cal Realty v. Keane et al., the Williamson Matter, Citicorp Mortgage v. Ocean West Enterprises and the Consulting Services Matters.

40.     Plaintiff, MR. BARRON, MR. COSIO-BARRON and MR. VICKERY entered into an oral agreement for Plaintiff to represent MR. BARRON, MR. COSIO-BARRON and MR. VICKERY. The terms of the oral agreement were (1) Plaintiff would represent MR. BARRON, MR. COSIO-BARRON and MR. VICKERY in the Williams and Williamson Matters, (2) Plaintiff would charge MR. BARRON, MR. COSIO-BARRON and MR. VICKERY an hourly rate, and (3) MR. BARRON, MR. COSIO-BARRON and MR. VICKERY would pay Plaintiff's legal fees on a monthly basis so long as Plaintiff continued to represent MR. BARRON, MR. COSIO-BARRON and MR. VICKERY.

41.     Plaintiff, OCEAN WEST entered into an oral agreement for Plaintiff to represent

9

FIRST AMENDED COMPLAINT

1  OCEAN WEST.  The terms of the oral agreement were (1) Plaintiff would represent OCEAN WEST,

2  in the Citicorp Mortgage v. Ocean West Enterprises Matter, (2) Plaintiff would charge OCEAN

3  WEST an hourly rate, and (3) OCEAN WEST would pay Plaintiff's legal fees on a monthly basis so

4  long as Plaintiff continued to represent OCEAN WEST.

5       42.    Plaintiff at all times performed its obligations under the oral agreement, save those

6  obligations excused by CDA, OCEAN WEST, MR. BARRON, MR. COSIO-BARRON and MR.

7  VICKERY's breach.

8       43.    CDA, OCEAN WEST, MR. BARRON, MR. COSIO-BARRON and MR. VICKERY

9  breached the terms of the oral agreement by refusing to pay Plaintiff's legal fees on a monthly basis.

10 This refusal to perform on the contract was without stipulation, valid justification, or excuse.

11      44.    Plaintiff's damages are a certain, foreseeable, and measurable consequence of

12 Defendants' breach.  As a direct and proximate result of said breach, Plaintiff has been damaged in an

13 amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by

14 Defendants to Plaintiff.

15      45.    In the alternative, Plaintiff is entitled to quantum meruit, i.e., the reasonable value of the

16 services rendered to Defendants in order to prevent Defendants' unjust enrichment.

17                         **THIRD CAUSE OF ACTION**

18 **(BREACH OF IMPLIED IN FACT CONTRACT AGAINST ALL DEFENDANTS AND DOES)**

19      46.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each

20 and every allegation contained in Paragraphs 1 through 45, inclusive.

21      47.    Plaintiff and Defendants have at all times acted consistently with the existence of a

22 valid contract for the rendering of Plaintiff's professional services.  Plaintiff performed its duties

23 arising under the contract for approximately one year, save those obligations which were excused by

24 Defendants' breach.  Throughout that time, Defendants accepted the benefit of Plaintiff's services with

25 full knowledge that Plaintiff expected to be financially compensated for its professional efforts.

26      48.    Defendants have breached the implied in fact contract by failing and refusing to

27 financially compensate Plaintiff for services rendered.  As a result, Defendants have been unjustly

28 enriched by benefitting from legal services for which they did not pay.

49.   Plaintiff's damages are a certain, foreseeable, and measurable consequence of Defendants' breach. As a direct and proximate result of said breach, Plaintiff has been damaged in an amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by Defendants to Plaintiff.

## FOURTH CAUSE OF ACTION

## (BREACH OF IMPLIED IN LAW CONTRACT AGAINST ALL DEFENDANTS AND DOES)

50.   Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 49, inclusive.

51.   Plaintiff has rendered professional services to Defendants from which Defendants have benefitted. Said services were not rendered gratuitously but with the mutual understanding that Plaintiff would be paid for the services rendered. Throughout that time, Defendants accepted the benefit of Plaintiff's services with full knowledge that Plaintiff expected to be financially compensated for its professional efforts.

52.   Defendants have failed to compensate Plaintiff for the services it rendered. As a result, Defendants have been unjustly enriched by benefitting from legal services for which they did not pay.

53.   Plaintiff's damages are a certain, foreseeable, and measurable consequence of Defendants' breach. As a direct and proximate result of said breach, Plaintiff has been damaged in an amount according to proof, for outstanding legal fees plus interest accrued and growing, owed by Defendants to Plaintiff. Plaintiff seeks to recover the reasonable value of its services.

## FIFTH CAUSE OF ACTION

## (VIOLATION OF CIVIL CODE §§1709 and 1710 (DECEIT) AGAINST DEFENDANTS CDA, MR. BARRON, MR. COSIO-BARRON AND DOES)

54.   Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 53 as though fully set forth herein.

55.   Since November of 2003 and continuing until December of 2004, MR. BARRON and MR. COSIO-BARRON repeatedly represented to Plaintiff that CDA would pay Plaintiff for the legal services it rendered. These representations of fact were false, false at the time they were made, and MR. BARRON and MR. COSIO-BARRON were aware of their falsity at the time they were made.

56.    MR. BARRON and MR. COSIO-BARRON falsely represented their and CDA's intention to pay Plaintiff and the false representations were made with the intent that Plaintiff rely on them. Plaintiff actually relied on CDA, MR. BARRON and MR. COSIO-BARRON's false representations of fact by agreeing to represent Defendants and continuing to represent Defendants for one year. Plaintiff's reliance was reasonable as Plaintiff was introduced to Defendants through a mutual friend and remained reasonable throughout the representation due to Plaintiff's growing friendship with Defendants and Defendants' promises and sporadic partial payments.

57.    CDA was aware that MR. BARRON and MR. COSIO-BARRON, who are CDA's officers, directors, and managing agents, had made false representations regarding CDA's ability and intention to pay Plaintiff for its services and failed to take any reasonable steps to prevent, stop, or remedy the fraudulent statements.

58.    CDA, MR. BARRON and MR. COSIO-BARRON's fraudulent statements were made with malice and a conscious disregard for the probable consequences their statements would cause Plaintiff.

59.    As a direct and proximate result of CDA, MR. BARRON and MR. COSIO-BARRON's statements, Plaintiff has been damaged in an amount to be proven at trial. Defendants' conduct and actions were done with malice, fraud, or oppression, and reckless disregard of Plaintiff's rights. Defendants engaged in offensive conduct despite their awareness of the effect on Plaintiff. As a result of these and other actions, Plaintiff is entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF CIVIL CODE § 1572 (ACTUAL FRAUD) AGAINST DEFENDANTS CDA, MR. BARRON, MR. COSIO-BARRON AND DOES)

60.    Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 59, as though fully set forth herein.

61.    Since November of 2003 and continuing until December of 2004, MR. BARRON and MR. COSIO-BARRON repeatedly represented to Plaintiff that CDA would pay Plaintiff for the legal services they rendered. These representations of fact were false, false at the time they were made, and MR. BARRON and MR. COSIO-BARRON were aware of their falsity at the time they were made.

62.   MR. BARRON and MR. COSIO-BARRON falsely represented their and CDA's intention to pay Plaintiff and the false representations were made with the intent that Plaintiff rely on them. Plaintiff actually relied on MR. BARRON and MR. COSIO-BARRON's false representations of fact by entering into the fee agreement with CDA and by continuing to represent Defendants in each matter as they arose. Prior to each new matter, MR. BARRON and MR. COSIO-BARRON assured Plaintiff that Plaintiff would be paid for each and every matter. Plaintiff's reliance was reasonable as Plaintiff was introduced to Defendants through a mutual friend and remained reasonable throughout the representation due to Plaintiff's growing friendship with Defendants and Defendants' sporadic partial payments and repeated oral assurances that Plaintiff would be paid.

63.   CDA was aware that MR. BARRON and MR. COSIO-BARRON, who are CDA's officers, directors, and managing agents, had made false representations regarding CDA's ability and intention to pay Plaintiff for its services and failed to take any reasonable steps to prevent, stop, or remedy the fraudulent statements.

64.   MR. BARRON and MR. COSIO-BARRON's fraudulent statements were made with malice and a conscious disregard for the probable consequences their statements would cause Plaintiff.

65.   As a direct and proximate result of MR. BARRON and MR. COSIO-BARRON's statements, Plaintiff has been damaged in an amount to be proven at trial. Defendants' conduct and actions were done with malice, fraud, or oppression, and reckless disregard of Plaintiff's rights. Defendants engaged in offensive conduct despite their awareness of the effect on Plaintiff. As a result of these and other actions, Plaintiff is entitled to punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**

**(VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 ET SEQ. AGAINST ALL DEFENDANTS AND DOES)**

66.   Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 65, as though fully set forth herein.

67.   Plaintiff is informed and believe that Defendants engaged in acts of fraudulent business practices and untrue or misleading advertisements in violation of numerous provisions under federal and state statutory and common law, including but not limited to the Unfair Competition Law

13
FIRST AMENDED COMPLAINT

1 (California Business & Professions Code §§ 17200 et seq. and 17500 et seq.) and the Consumer Legal

2 Remedies Act (Civil Code § 1770 et seq.)

3     68.   California Business and Professions Code §17200 et seq., provides that unfair

4 competition shall mean and include "all unlawful, unfair or fraudulent business act or practices and

5 unfair, deceptive, untrue or misleading advertising."

6     69.   Defendants fall within the definition of "person" as set forth at Business & Professions

7 Code § 17203 and §17506.

8     70.   Plaintiff is informed, believes, and thereon alleges that Defendants have maintained

9 fraudulent business practices by engaging in practices including but not limited to the following:

10 falsely stating that Defendants intend to pay for legal services, falsely stating that Defendants have the

11 ability to pay for legal services, and continuing to misrepresent their intention and ability to pay for

12 legal services over a one year period in order to induce their attorneys to continue to provide them with

13 legal representation. Plaintiff is not Defendants only victims. Defendants have engaged in similar

14 conduct with at least three other law firms within the past two years.

15     71.   Plaintiff is informed, believes, and thereupon alleges that as a direct and proximate

16 result of Defendants' unfair and fraudulent business practices, Defendants have received and will

17 continue to receive ill-gotten gains. Plaintiff is therefore entitled to disgorgement of all monies saved

18 as a result of Defendants' fraud.

19     72.   Defendants' conduct and actions were done with malice, fraud, or oppression, and

20 reckless disregard of Plaintiff's rights. Defendants engaged in offensive conduct despite their

21 awareness of the effect on Plaintiff. As a result of these and other actions, Plaintiff is entitled to

22 punitive and exemplary damages.

23                         **EIGHTH CAUSE OF ACTION**

24    **(OPEN BOOK ACCOUNTING AGAINST ALL DEFENDANTS AND DOES)**

25     73.   Plaintiff repeats, re-alleges, and incorporates by this reference Paragraphs 1 through 72,

26 as though fully set forth herein.

27     74.   Plaintiff has received some monetary payment for the legal services Plaintiff provided

28 to Defendants.

75.   Plaintiff is informed and believes and thereon alleges that Defendants has provided Plaintiff with some money as payment for legal services rendered, but not the entire remaining balance due.

76.   Plaintiff is informed, believes, and thereon alleges that Plaintiff is entitled to an open book accounting for the monies owed to Plaintiff by Defendants.

WHEREFORE, Plaintiff prays for judgment as follows:

1.   For general and compensatory damages, including prejudgment interest, in accordance with proof at time of trial on the First and Second Causes of Action;

2.   For quantum meruit on the Third and Fourth Causes of Action;

3.   For general and punitive damages to be determined at trial on the Fifth and Sixth Causes of Action;

3.   For restitution and disgorgement, injunctive relief, and any further relief the court deems just and proper on the Seventh Cause of Action;

4.   For an open book accounting, general damages according to proof, and any further relief the court deems just and proper on the Eighth Cause of Action;

5.   For Plaintiff's costs and attorneys fees;

6.   For such other and further relief as the Court may deem just and proper.


DATED: February 18, 2005

                                        KEITH A FINK & ASSOCIATES

                                        By _____
                                           Keith A. Fink
                                           Sarah K. Hernandez
                                           Jack Rifenbark
                                           Attorneys for Plaintiff
                                           KEITH A. FINK & ASSOCIATES,
                                           a sole proprietorship dba KEITH A. FINK
                                           & ASSOCIATES

15
FIRST AMENDED COMPLAINT